UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DANIEL JOHN RILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Docket no. 10-cv-218-GZS |
| | ) |
| MARK ALFORD et. al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER ON MOTION TO DISMISS**

Before the Court is Defendants' Motion to Dismiss (Docket # 17).  For the reasons explained herein, the Court GRANTS IN PART AND DENIES IN PART the Motion.

**I.   STANDARD OF REVIEW**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the "legal sufficiency" of a complaint.  Gomes v. Univ. of Me. Sys., 304 F. Supp. 2d 117, 120 (D. Me. 2004).  In deciding such a motion, the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in Plaintiff's favor.  Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).  The Court may also consider judicially noticeable facts.  See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (explaining the "narrow exception[s]" for consideration of "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint"); see also F.R.E. 201.

The general rules of pleading require "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, "[t]o survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation omitted).  Thus, faced with a motion to dismiss, the Court must examine the factual content of the complaint and determine whether it can reasonably infer "that the defendant is liable for the misconduct alleged." Id.  In distinguishing sufficient from insufficient pleadings, which is "a context-specific task," the Court must "draw on its judicial experience and common sense." Id. at 1950.

## II. PROCEDURAL BACKGROUND

Plaintiff Daniel John Riley ("Riley") brings this Bivens action based on the events of June 7, 2007.  The five-count Complaint in this case names seven defendants: (1) Mark Alford, (2) James Allandydy, (3) Michael Allen, (4) Joseph Buchanan, (5) Phillip Christiana, (6) Jeffrey Mertes, and (7) Stephen Monier.  The Complaint also lists eight unnamed "John Doe" defendants.  Count One claims that all fifteen of the Defendants engaged in a civil conspiracy to deny Riley his Fourth Amendment rights by illegally arresting, detaining and using excessive force against him.  Count Two claims Allen, Buchanan, Mertes, Monier and John Does #1-#3 violated the Fourth Amendment by using excessive force to effectuate Plaintiff's arrest.  Count Three claims that all fifteen defendants arrested and detained Riley in violation of the Fourth Amendment.  Count Four asserts a state law claim of assault and battery against Allen, Buchanan, Mertes, Monier and John Does #1-#3.  Count Five asserts a state law claim for false imprisonment against all Defendants.

On September 20, 2010, the United States Attorney certified that all of the named Defendants were acting in the scope of their employment with the United States Department of Justice and asked that the United States be substituted as the sole Defendant on the two state law claims (See Notice of Substitution (Docket # 16).)  The Court allowed this substitution on September 29, 2010.

The events that serve as the basis for Riley's claims also underlie Riley's 2008 federal criminal conviction.  In his criminal case, Riley was convicted on four counts, including conspiracy to prevent federal officers from discharging their duties, conspiracy to commit offenses against the United States, being an accessory after the fact of Edward and Elaine Brown's tax evasion and possession of a firearm and/or destructive device in connection with a crime of violence.  See United States v. Riley, D.N.H Docket # 1:07-cr-189-GZS.  At trial, the evidence related to the June 7, 2007 events as well as evidence related to all of Riley's actions in support of Edward and Elaine Brown between March and September 2007.  See United States v. Gerhard, 615 F.3d 7, 15-17 (1st Cir. 2010) (summarizing evidence). Following his jury trial and conviction, on October 28, 2008, this Court sentenced Riley to 432 months imprisonment and five years of supervised release.  See id. at 12.

## III.  FACTUAL DISCUSSION

The well-pled factual allegations in the Complaint, along with any reasonable inferences that can be drawn in Plaintiff's favor, yield the following narrative:[1]

---

[1] Defendants have invited the Court to draw the facts, as relevant to the pending Motion, from the Affidavit by David John Riley, dated August 3, 2007 (Docket # 17-4) as well as the First Circuit's opinion in United States v. Gerhard, 615 F.3d 7 (1st Cir. 2010).  In response, Plaintiff argued that these items do not meet the requirements for consideration on a motion to dismiss and should be stricken.  (See Pls. Obj. (Docket # 23) at 4.)  Nonetheless, Plaintiff then proceeds to invite this Court to consider a portion of the testimony presented at the prior eleven-day criminal trial without specific citation.  (See Pl. Obj. ¶9.)  Ultimately, the Court has not relied on any of these materials in construing the facts.  While this Court is very familiar with the facts underlying this action based on presiding over the related criminal case, it is not clear that the factual items referenced in the motion papers are undisputed or otherwise qualify as judicially noticeable facts for purpose of the pending Motion.  See Alternative

On the morning of June 7, 2007, Riley was in Plainfield, New Hampshire on property owned by Edward and Elaine Brown (together, the "Browns"). The Browns were engaged in a standoff with federal authorities because both had refused to surrender to serve to sentences on tax-related offenses in early 2007. Riley was walking a dog down the driveway. Unbeknownst to Riley, law enforcement agents were hidden in the woods on either side of the driveway. These agents were part of a covert operation by the United State Marshal's Service ("USMS"). The goal of this operation was to arrest Edward Brown, whom USMS believed would likely be taking a morning walk down his driveway. At this moment, none of the Defendants had a warrant to arrest Riley nor was Riley the intended target of their covert operation.

When Riley encountered Allen and Mertes in the woods, they were carrying "M16 style assault weapons" and wearing indiscernible camouflage clothing. (Compl. Docket # 1) ¶ 12.) Riley initially thought the pair were turkey hunters. Allen or Mertes pointed their weapons at Riley's chest while standing within a few feet of him. Riley then turned and started to flee. The officers proceeded to discharge weapons while Riley fled up the driveway. Approximately halfway up the driveway, Riley encountered Buchanan and other unidentified officers, all of whom were also dressed in camouflage clothing without identifying marks. Without provocation or warning, these officers used a taser on Riley, which caused Riley to fall to the ground, sustaining pain and puncture wounds. (Compl. ¶ 14.) Allen, Mertes, Buchanan and other unidentified officers punched and kicked Riley as he lay on the ground. One of the officers brought his knee down on the back of Riley's head causing a head wound as well as other cuts and scrapes to Riley's right hand. Riley was then handcuffed and dragged into the woods. One

---

Energy, 267 F.3d at 33. Moreover, the parties have not taken the appropriate steps to place any specific portion of the actual record from that trial before the Court for its consideration in connection with the Motion.

unidentified officer placed a pistol on the back of Riley's head and threatened him to "be quiet or else." (Compl. ¶16.)

Riley was not offered immediate medical treatment. United States Marshal Monier watched the arrest of Riley via remote cameras as it was occurring but took no steps to stop the arrest or the use of force. Instead, Riley, still in handcuffs, was placed in a black sport utility vehicle and driven to a location approximately three miles away from the driveway where he was initially detained. Allandydy and other armed but unidentified officers were also in this vehicle. Although Riley was subsequently returned to the driveway area under the auspices that he would be released to convince the Browns to surrender, Riley was not released.

Instead, Allandydy then informed Riley that he would be transported to the Lebanon Police Department (approximately nine miles away). At the Lebanon Police Department, Riley was subjected to a strip search and placed in a jail cell for approximately two hours. (Compl. ¶27-28.) Riley was then subjected to a five hour interrogation by Allandydy, Alford, Christiana and at least one other unidentified law enforcement officer while an armed officer guarded the door to the conference room where the interrogation took place. (Compl. ¶28-29.) After being detained at the police station for more than seven hours, Alford and Christiana placed Riley in a white sedan and drove him to a location approximately a mile and one half from the driveway where he was then released. (Compl. ¶31.)

The Complaint further alleges that Allen, Buchanan, Mertes, Monier and other unidentified defendants filed "inaccurate or incomplete reports, degrade[ed] or chang[ed] the resolution of video that captured the events, and destroy[ed] . . . evidence, such as spent shell casings and records relating to weapon carried and used by defendants on June 7, 2007." (Compl ¶20.)

## IV. DISCUSSION

Defendants' Motion to Dismiss seeks dismissal of Counts I-III based on qualified immunity and dismissal of Counts IV and V based on lack of subject matter jurisdiction pursuant to the Federal Tort Claims Act. The Court examines these two bases for dismissal in turn.

### A. Counts I-III: Qualified Immunity

"Officials are entitled to qualified immunity unless (1) 'the facts that a plaintiff has alleged or shown make out a violation of a constitutional right' and (2) 'the right at issue was 'clearly established' at the time of [their] alleged misconduct.'" Walden v. City of Providence, 596 F.3d 38, 52 (1st Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, ---, 129 S. Ct. 808, 816 (2009)). "The 'clearly established' prong has two aspects: (1) 'the clarity of the law at the time of the alleged civil rights violation,' and (2) whether, given the facts of the particular case, 'a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights.'" Barton v. Clancy, --- F.3d ----, 2011 WL 117261, at *11 (1st Cir. Jan. 14, 2011) (quoting Pearson, 555 U.S. at 269).

Riley's claims invoke two separate but related constitutional rights: (1) the right to be free from arrest and detention absent probable cause and (2) the right to be free from excessive force. Defendants do not dispute in the context of the present motion the clarity of the law respecting these rights as of June 2007; Defendants do argue that the facts, as alleged, do not provide a basis for a reasonable officer to understand that the alleged conduct violated Riley's rights to be free from unreasonable seizure on June 7, 2007.

6

### 1. Arrest Without Probable Cause (Counts I & III)

Generally, a valid arrest requires probable cause that a specific crime has been committed. Probable cause is necessarily "fact dependent." Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004). However, "in the case of a warrantless arrest, if the presence of probable cause is arguable or subject to legitimate question, qualified immunity will attach." Id. (citing Ricci v. Urso, 974 F.2d 5, 7 (1st Cir.1992)). Thus, the Court must ask whether the unlawfulness of Riley's arrest "would have been apparent to an objectively reasonable officer standing in [Defendants'] shoes." Cox, 391 F.3d at 31.

In this case, the nature of the well-publicized standoff at the Browns' property as well as the size of the Browns' property meant that those visiting and walking around the property were there quite purposefully. An objectively reasonable officer could have concluded that anyone on the property on the morning in question was providing comfort and assistance to the Browns, which, in turn, would have provided probable cause to arrest Riley for accessory-after-the-fact. See 18.U.S.C. § 3; see also Logue v. Dore, 103 F.3d 1040, 1044 (1st Cir. 1997) (holding that probable cause exists when "the facts and circumstances . . . are sufficient to lead an ordinarily prudent officer to conclude that an offense has been, is being or is about to be committed"). In short, an objectively reasonable officer acting as part of the covert operation on June 7th could have arguably found probable cause to arrest Riley based on his location and overall reaction to the driveway encounter. See, e.g., Statchen v. Palmer, 623 F.3d 15, 18 (1st Cir. 2010) (noting that the aim of qualified immunity is to "avoid the chilling effect of second-guessing where the officers, acting in the heat of events, made a defensible (albeit imperfect) judgment").

To the extent Riley seeks to separately claim that he was improperly detained for more than seven hours, the Court does not believe the allegations support a claim that Riley was subjected to any unreasonable delay during his seven to eight hours of detention. Beyond that, the Court is satisfied that Riley's detention was well within the recognized forty-eight hour time limit for otherwise lawful arrests. See County of Riverside v. McLaughlin, 500 U.S. 44, 56-57 (1991).

Therefore, the Court finds that all of the Defendants are entitled to qualified immunity on Count III and on Count I, to the extent to it alleges a conspiracy to arrest and detain Riley in violation of the Fourth Amendment.

### 2. Excessive Force (Counts I & II)

When an officer making an arrest exceeds the bounds of reasonable force, the force is deemed excessive and the Fourth Amendment right to be free from unreasonable seizure is implicated. "[C]laims of excessive force are to be judged under the Fourth Amendment's 'objective reasonableness' standard." Brosseau v. Haugen, 543 U.S. 194, 197 (2004) (quoting Graham v. Conor, 490 U.S. 386, 388 (1989)). In considering the reasonableness of the force, the Court must consider multiple factors, including:

> (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'

Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010) (quoting Graham, 490 U.S. at 396).

As framed by Defendants, Riley's Complaint contains three different allegations of excessive force: (1) the discharge of a weapon at him, (2) the use of a taser and (3) the force applied in connection with handcuffing, which allegedly caused a head wound and other scrapes. (See Defs. Mot. at 11.) At the time all of these actions were taken, the current minimal record

suggests that Riley's most serious crime was being an accessory-after-the-fact. He also was apparently unarmed. Thus, the first two Graham factors do not appear to support either the use of firearms or a taser. As to the third Graham factor, Riley claims the officers discharged a weapon at him as he ran away and used a taser on him "without provocation or warning." (Compl. ¶14.) Thus, Riley acknowledges he was fleeing. Riley does not acknowledge, on the other hand, that he, or any other similarly-situated reasonable individual, had reason to know that he was fleeing from law enforcement. Even assuming that the third Graham factor weighs in favor of finding the Defendants used only reasonable force, Riley's allegations are sufficient to survive a motion to dismiss an excessive force claim. See, e.g., Pena-Borrero v. Estremeda, 365 F.3d 7, 14 (1st Cir. 2004) (refusing to grant a motion to dismiss based on qualified immunity); see also Estate of Bennett v. Wainwright, 548 F.3d 155, 174-75 (1st Cir. 2008) (upholding a finding of qualified immunity on a deadly force claim in the context of summary judgment); Parker v. City of South Portland, Docket No. 06-cv-129, 2007 WL 1468658 at *21 & n.79 (collecting cases in which use of a taser was deemed to create a triable issue of fact as to excessive force), aff'd, 2007 WL 2071815 (affirming recommended decision).

In assessing the reasonableness of the force used to effect Riley's arrest, Defendants ask the Court to consider other information, including the fugitive status of the Browns, the public "death threats" made by Edward Brown as well as their assertion that Riley has admitted he "was not cooperating with instructions" at the time Defendants used force to handcuff him. (Defs. Mot. at 12-13.) However, this information is simply not part of the Complaint and, as such, not part of the record currently before this Court. On a more developed summary judgment record, the Court could consider such information and potentially find that all of the Defendants are entitled to qualified immunity in connection with Plaintiff's excessive force claims. However,

the current record simply does not allow the Court to conclude that the various alleged uses of force were objectively reasonable.

### B. The FBI Defendants

Absent a blanket application of qualified immunity on Count I through III, Defendants separately argue that the Defendants Mark Alford and Phillip Christiana are entitled to qualified immunity. As alleged in the Complaint, Defendants Mark Alford and Phillip Christiana worked for the FBI. On June 7, 2007, Riley alleges Alford and Christiana were involved in his interrogation as well as in transporting him back to the Browns' property. The Complaint does not allege that Alford and Christiana were directly involved in or present for his arrest or the use of force. Therefore, Defendants argue that Alford and Christiana are separately entitled to qualified immunity because they simply acted on the plausible assumption that Riley had been subject to a proper arrest.

Defendants' argument has substantial merit and Plaintiff has chosen to not specifically respond to the argument in his Objection to the Motion to Dismiss. On the facts alleged, Alford and Christiana interrogated Riley at the Lebanon Police Station relying on the fact that the other officers had found probable cause to arrest and detain Riley. Given this Court's finding that the decision to arrest Riley falls within the ambit of qualified immunity, the Court readily concludes that Alford and Christiana are entitled to qualified immunity for their role in questioning and transporting Riley after his arrest. See Bilida v. McCleod, 211 F.3d 166, 174-75 (1st Cir. 2000) (noting that qualified immunity applies when an officer relies on "[p]lausible instructions from a superior or fellow officer"). On this basis, the Court dismisses all claims against Alford and Christiana.

### C. Counts IV & V: Federal Tort Claims Act (FTCA)

Counts IV and V state tort claims against the United States; as such, they are subject to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. In relevant part, the FTCA requires that claims be presented in writing to the appropriate agency within two years of accrual. See 28 U.S.C. § 2401(b). "One of the restrictions the FTCA provides is a strict time limit for bringing suit. . . . Claims not brought within the two-year period fall outside of the courts' subject matter jurisdiction and cannot be heard." Rakes v. United States, 442 F.3d 7, 19 (1st Cir. 2006). The undisputed record before the Court in connection with the Defendant's Motion to Dismiss is that Riley did not present his tort claims to either the United States Marshal's Service or the Federal Bureau of Investigation at any time prior to September 17, 2010. (See Auerbach Decl. (Docket # 17-2) & Mells Decl. (Docket # 17-3).) Therefore, the Court concludes it lacks subject matter jurisdiction to hear Riley's tort claims, which accrued on or about June 7, 2007. For this reason, the Court dismisses Counts IV & V.

### V. CONCLUSION

For the reasons explained herein, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss. The Court hereby DISMISSES Counts III, IV and V as well as all claims against Defendants Alford and Christiana. Finally, to the extent Count I alleges a conspiracy to arrest and detain Riley in violation of the Fourth Amendment, it is also hereby DISMISSED.

SO ORDERED.

      /s/ George Z. Singal
      United States District Judge

Dated this 8th day of February, 2011.